AO 106 (Rev. 04/10) Application for a Search Warrant  AUTHORIZED AND APPROVED/DATE:  7/19/22

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. M-22-522-SM
)
A IPHONE XS Max cellular phone Model: MT592LL/A, )
IMEI: 357277096097 currently in the custody of )
the ATF at 901 NE 122nd St., Oklahoma City )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ____Western____ District of ____Oklahoma____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(6) | False Statement During the Attempted Purchase of a Firearm |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David McCauley, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 19, 2022

*Judge's signature*

City and state: Oklahoma City, Oklahoma   SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>A Cellular IPHONE XS Max, Model: MT592LL/A, IMEI: 357277096097251 CURRENTLY IN THE CUSTODY OF ATF LOCATED AT 901 NE 122nd Street, Oklahoma City, Oklahoma | Case No. M-22- 522 -SM |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, David McCauley, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so since June, 2018. Prior to Employment with ATF, I was employed by the Hampton Police Department. I have been employed in law enforcement for over eight years. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy; as a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws. I am currently assigned to the Oklahoma City Field Office and am charged with investigating violations of Federal Law, including violations

1

of the Gun Control Act of 1968, as amended (Title 18, United States Code, Sections 921 et seq.), explosives, arson, alcohol, and tobacco laws.

3.  As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants under the authority of the United States.

4.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.  The property to be searched is an IPHONE XS Max, Model: MT592LL/A, hereinafter the "Device." The Device is currently located at the ATF Oklahoma City Field Office, 901 NE 122nd Street, Oklahoma City Oklahoma.

6.  The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

7.  On 03/17/2022, your affiant received a NICS Delayed Denial for Brionjre HAMILTON. HAMILTON went to Sooner State Pawn (FFL#57307109024F04138) located at 4205 NW 23rd Street, Oklahoma City, Oklahoma on multiple dates. HAMILTON was delayed for each purchase, but the firearms could only he held for the mandatory three-day waiting period before they must be made available for transfer if there is no denial notice. Firearm sales are delayed for a period of time when there is some indication in a criminal background check that evidences a prohibiting factor. NICS investigators must then determine if the prohibiting factor does in fact exist. In this case, it appears form the Brady Report, which details the investigators attempts to locate applicable verifying information, that the denial was delayed while investigators

2

verified the facts of the drug arrests and any associated court cases. As a result of that NICS investigation, HAMILTON was later denied due to two drug charges from 2019 and 2021, which indicated that he is an unlawful user of a controlled substance.

8. March 18, 2022, SA McCauley contacted Sooner State Pawn to obtain information related to HAMILTON. SA McCauley spoke with Todd Horton who was listed as the transferee on the 4473 forms for HAMILTON's purchases. SA McCauley inquired about the three (3) firearms that were listed for HAMILTON on the denial. Mr. Horton informed SA McCauley that HAMILTON had purchased nine (9) firearms from Sooner State Pawn. Mr. Horton provided SA McCauley with HAMILTON's phone number and provided 4473 forms for the nine (9) firearms.

9. On March 18, 2022, SA McCauley contacted HAMILTON via phone number 405-885-7483. SA McCauley contacted HAMILTON who was advised that he was a prohibited person based on being labeled a drug user due to his two arrests from 2019 (OHP DUI/D arrest) and 2021 (OCPD possession of firearm under the influence of marijuana arrest). HAMILTON confirmed his identity and advised he was aware of the arrests. SA McCauley advised HAMILTON to return the nine (9) firearms to Sooner State Pawn. HAMILTON advised SA McCauley that all but one firearm had been stolen.

10. SA McCauley advised HAMILTON that it appeared he was selling the firearms and HAMILTON did not deny this assertion but did advise reports were made through Oklahoma City Police Department (OCPD). SA McCauley advised HAMILTON to take the one firearm he claimed to have in his possession back to the business which he has failed to comply.

11. After speaking to HAMILTON and advising him of the prohibiting factors HAMILTON refused to return calls or messages. Your affiant placed HAMILTON on a NICS

3

Flag to be informed if HAMILTON attempted to purchase firearms while knowingly being prohibited.

12. On March 27, 2022, HAMILTON completed the ATF form 4473 at Just Guns, at RK Shows in Oklahoma City, Oklahoma. HAMILTON attempted to purchase a Springfield, model XD-40, .40 caliber pistol, bearing serial number XD432067. HAMILTON was denied due to his prohibiting factor. HAMILTON knowingly provided Just Guns false information.

13. On April 7, 2022, HAMILTON went to Kings Pawn and Gun, located in Del City, Oklahoma. HAMILTON completed the ATF Form 4473. HAMILTON attempted to purchase a Springfield, model XD-40, .40 caliber pistol, bearing serial number GM132131. HAMILTON was denied due to his prohibiting factor. HAMILTON knowingly provided Kings Pawn and Gun false information.

14. On June 1, 2022, HAMILTON went to Sooner State Pawn, located in Oklahoma City, Oklahoma. HAMILTON completed the ATF Form 4473. HAMILTON attempted to purchase a Taurus, model G2C, 9mm caliber pistol, bearing serial number ICI2881. HAMILTON was denied due to his prohibiting factor. HAMILTON knowingly provided Sooner State Pawn false information.

15. On July 11, 2022, HAMILTON went to COPS Gun Shop, located in Oklahoma City, Oklahoma. HAMILTON completed the ATF Form 4473. HAMILTON attempted to purchase an ATI, Model: Omni Hybrid Maxx, .556 caliber pistol, bearing serial number NS349608. HAMILTON was denied due to his prohibiting factor. HAMILTON knowingly provided COPS Gun Shop false information.

16. On July 11, 2022, SA McCauley was contacted by COPS Gun Shop and spoke to Austin Warfield. Mr. Warfield advised that a female, believed to be HAMILTON's girlfriend, attempted to purchase the same type of firearm HAMILTON was denied. Carrisha JONES, DOB: 04/15/1995, was observed by salesclerks at COPS Guns Shop exit a vehicle occupied by HAMILTON and another unknown male.

17. HAMILTON remained in the vehicle and once JONES was inside of the business, she completed the ATF Form 4473. JONES attempted to purchase an ATI, Model: Omni Hybrid, .556 caliber pistol, bearing serial number NS349608. JONES is not prohibited; however, COPS Gun Shop did not proceed with the sale believing JONES was attempting to straw purchase the firearm for HAMILTON

*Interview of Brionjre HAMILTON- Oklahoma City Police Department, Oklahoma City, Oklahoma*

18. On July 18, 2022, at approximately 10:00AM, HAMILTON was interviewed at Oklahoma City Police Department (OCPD) by your affiant. HAMILTON was positively identified via his Oklahoma Driver's License an, Social Security Card, and Medicinal Marijuana patient card. Prior to the interview your affiant provided HAMILTON with a MIRANDA waiver form. HAMILTON signed the form, acknowledging and waiving his rights under the MIRANDA decision and agreed to talk with your affiant. During the interview HAMILTON confirmed that he remembered speaking with your affiant in early March and remembered that he was told of his prohibited status. HAMILTON advised that since that conversation he attempted to purchase a firearm three (3) more times and was advised that he was continually being denied due to his drug user status. HAMILTON further advised that he has a medicinal marijuana card, confirming his drug user and prohibited status. The 4473 form specifically advises that a medicinal marijuana

5

card does not except an individual from being prohibited as an illegal user of controlled substances under Federal law. HAMILTON was asked about his attempted purchase on July 11, 2022, from COPS Gun Shop, located at 416 Hudiburg Circle, Suite B, Oklahoma City, Oklahoma. HAMILTON initially denied having anyone attempt to purchase the firearm for him. However, upon viewing the surveillance footage and being advised of the warrant, HAMILTON admitted to contacting Carrrisha JONES, his sister, and asking her to purchase the firearm for him. HAMILTON declined to provide details on all of the other purchases and requested a lawyer. The interview was ended, and HAMILTON was placed under arrest and taken into federal custody.

*Criminal History of Brionjre HAMILTON*

19. Your affiant has reviewed a criminal history for **HAMILTON,** an admitted Murder 1 Blood gang member, and found he has the following convictions.

    a. Carrying a Firearm while Under the Influence of Drugs, CM-2021-3533 (Plead Guilty on May 25, 2022, in Oklahoma County District Court

    b. Possession of Marijuana and DUI/D- OHP Incident 06115-19

20. In my training and experience, members of violent street gangs, like the Murder 1 Bloods, commit crimes with the use of firearms and will rely on fellow gang members and associates to supply members with firearms. It is also my experience that members of street gangs will earn money on behalf of the gang by selling and/or smuggling drugs and guns.

21. The Device is currently in the lawful possession of the ATF. It came into the ATF's possession following the arrest of **Brionjre HAMILTON** by your affiant on July 18, 2022. Therefore, while the ATF might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

22.   The Device is currently in storage at 901 NE 122nd Street, Oklahoma City, Oklahoma. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state, as they were when the Device first came into the possession of the ATF.

## TECHNICAL TERMS

23.   Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an

extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

24. Based on my training, and experience, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type

can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

10

    c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*David McCauley*
David McCauley
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on this __19th__ day of July, 2022.

SUZANNE MITCHELL
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a IPHONE XS Max, model: MT592LL/A, Serial#F2LXK0HKKPHC, IMEI: 357277096097251, hereinafter the "Device". The Device is currently located at the Bureau of Alcohol, Tobacco, Firearms and Explosives, 901 NE 122nd Street, Oklahoma City, Oklahoma.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.





1

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 18 USC 922(a)(6) ,18 USC 922(g)(3), and 18 USC 922(d) that involve **HAMILTON** including:

    a. Any information recording **HAMILTON**'s schedule or travel.

    b. Any text message, instant message or electronic messages communicating between known or unknown co-conspirators.

    c. Any photos of stolen items.

    d. Any photos of firearms.

    e. Any phone records between known or unknown co-conspirators.

    f. Lists of customers and related identifying information including images and videos;

    g. Types, amounts, and prices of guns smuggled as well as dates, places, and amounts of specific transactions;

    h. Any information related to sources of guns (including names, addresses, phone numbers, or any other identifying information);

    i. All bank records, checks, credit card bills, account information, and other financial records;

    j. All communications between **HAMILTON** and Murder 1 Blood members or their associates regarding criminal activity; or the organizational roster of the Murder 1 Blood criminal enterprise here in Oklahoma within the last 24 months.

1

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   a. records of Internet Protocol addresses used;

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.